## Case No. 12,239b.

ST. LOUIS SMELTING & REFINING CO.
v. RAY et al.

[King, Laws & Pr. Colo. 202.]

Circuit Court. D. Colorado. Nov., 1879.[1]

MINES AND MINING — ISSUANCE OF PATENTS FOR PLACER CLAIMS—FOREIGN CORPORATIONS— POWER TO BUY AND SELL LAND.

[1. Under the acts of congress of 1866, 1870, and 1872, a purchaser of several adjacent placer mining claims, in order to procure a valid patent, must make separate applications for each

location, and take separately all the statutory steps in respect to each one of them. Therefore a patent covering several claims, and issued on one application, is no evidence of title.]

[2. While a foreign corporation organized for the purpose of reducing ores cannot engage in the business of buying and selling real estate, yet, having purchased a considerable tract for the purpose of erecting its works thereon, it may sell portions thereof which it finds unnecessary for its purposes, and the court will not look closely into the question whether the original purchase was of a larger tract than necessary.]

[This was an action of ejectment brought by the St. Louis Smelting & Refining Company against Mrs. Sarah Ray and others.]

BY THE COURT. The judge charged the jury as follows:

Gentlemen: We have come to an understanding about the law in this case, which will relieve you from any attentive consideration of the evidence. The plaintiff brings this action against the defendants to recover certain lots in the town of Leadville, and of course, assuming the affirmative in relation to that matter, the defendants being in possession of the property, and resisting the plaintiff's claim, it is upon the plaintiff to show title to the property by a preponderance of evidence. Upon that point, the plaintiff has introduced a patent issued to one Thomas Starr for a placer claim, covering 164.61 acres, and upon that a question is presented as to whether a patent for so much land can be issued, under the laws of congress as they now stand, to one person. Upon examining the law, we find, in the first place, that an act was passed July 9, 1870 [16 Stat. 217], the first one passed by congress giving authority to obtain title from the government for placer claims, and in that act it was provided, in the way of an amendment to a previous act which had been passed, respecting lode claims, that persons having a right to such could obtain title thereto under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims; and it was provided in the same section of the act that no location of a placer claim hereafter shall exceed one hundred and sixty acres for any one person or association of persons, which location shall conform to the United States surveys. That clause of the act put individuals and associations of persons upon the same footing; that is to say, subject to the local rules of the different mining districts, they could obtain a title for one hundred and sixty acres of land as a placer claim, if the local rules would admit of their taking so much.

If the local rules restricted them to a less quantity, then they would have to conform to the local rules. The provision is, that the claim shall not exceed one hundred and sixty acres; it may be smaller if the local rules so provided, and the provision, as you may have noticed, as I gave it to you in the first place, is that they may obtain the entry and patent under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims. Now, an act of congress was passed in 1866 [14 Stat. 66] prescribing the conditions upon which a title could be obtained for lode claims; that is to say, the applicant was required to make a diagram of the claim, showing the extent of it upon the surface of the ground, so as to include the top or apex of the lode; he was required to post a notice upon that claim for a certain length of time, and publish a notice in a newspaper, of his application; to file his diagram in the local land office; and perhaps do other things which I need not enumerate. This was for the purpose of giving notice to persons who might have a claim to the property adverse to the applicant, that they might come in and go before the local officers, for the purpose of showing their right, and if they came in and filed what was called an "adverse claim," that is to say, another claim to the same property, that the parties would be required to go into court (some court of competent jurisdiction) and there litigate the matter in issue between them; that is to say, by a suit regularly brought in court and tried by a jury. They would determine the controversy which had arisen between them in regard to the title of the property, and the successful party to that suit was to be entitled to receive a patent from the government. In 1872 another act was passed upon that subject, which was somewhat different from that of 1866, but, so far as it relates to the matters we have under consideration at this time, we may say that it was substantially the same. It required that the persons desiring to obtain a patent for land claimed for mining purposes should file an application for patent, a plat and field notes of the claim in the local land office, and should post a copy of the plat, together with a notice of his application, upon the claim, and should publish a notice of his application, and so on, in order to give to other claimants who might have some right to the property an opportunity to come in and show their right, and contest with him the question of ownership, if they desired to do so. And that act contains similar provisions in respect to placer claims, also; provisions which, in part, were designed to take the place of that of 1870, to which I have called your attention, and I believe that it does not wholly repeal the act of 1870, and perhaps it left some of the provisions of that act still in force.

But taking the two acts together, the act of 1870 and the act of 1872 [17 Stat. 88], it is to be said that it was required of a claimant for a placer mine that he should post a notice upon his claim, and that he should give notice by publication, and that he should show that improvements had been made upon the claim as required by the act of 1872. And that law was in force at the time that this patent was applied for, at the time it

was issued, and is still in force. So that it has become a question whether the patent which is before you was issued in accordance with the provisions of law. Now, upon that we have to say that it was not, because, as we have ascertained from an examination of the patent, and from some of the testimony that has been received with it, testimony of the proceedings in the land office, this was an application made since the year 1870, since this act was passed, upon several claims (twelve or fifteen perhaps, was the number), and those claims are all embodied in this one claim, which is described in the patent; the application appears to have been made as for one claim, and embodying twelve or fifteen locations that were made at different times, from perhaps 1865, or some time prior to the year 1870, up to the year 1877; and these were all embodied in one claim and one application, and the land offices have issued a patent upon that for one claim. Now this, as we may say, was not in conformity with the acts of congress. If there were twelve or fifteen claims, it was incumbent upon the applicant, Mr. Starr, to show his right to each of these claims, to have each of them surveyed, to have the notice posted upon each, to give notice by publication, and take the same proceedings as to each one of the claims. If he had so done, it would be no objection that he had purchased some of them from the first locators, or from the grantees of the first locators, or that perhaps he had located others of them himself; we would not inquire how he had acquired the right to these several claims if he had taken the steps which the law required of him, as to each one of them, but not having done that, having attempted to embody all of these claims in one application, and having made it substantially one claim, the proceeding was entirely irregular, under the statute. If it had appeared that this application was made for one claim located before the year 1870, in pursuance to the rules of California mining district, then his application would have been regular, if the local laws of California mining district, existing before the passage of this act of 1870, had provided that one person might hold so much as one hundred and sixty acres; if this claim had been taken according to the local rules at that time, then his application would have been regular and proper: but, as I stated to you before, we have ascertained that the application was not of that character; that there are a number of claims consolidated in one, or one application made upon all of these claims, for a quantity of land in excess of that which may be taken by one individual under these acts of congress. For that reason we declare, as a matter of law, that this patent is void, and upon that the plaintiff fails altogether.

Now, there is another question which was presented in the case, as to the power and authority of the plaintiff, being a foreign corporation, to hold this land. It was alleged on the part of the defendants that the plaintiff, being a foreign corporation, and being organized for the purpose of reducing ores, in its name a smelting and refining company, they could have no authority to hold lands other than for the purpose for which it was created. That is to say, that it might buy lands necessary for its use in erecting its smelting works, all that should be required for carrying on its business; but whenever it should exceed that limit, and acquire more land than was necessary for its purpose, it was beyond the power conferred upon it in its certificate of organization. And that, as a general proposition, is true. A corporation, created for a certain purpose, must confine itself to the matter for which it was created; but it would seem, from what is shown here in evidence, that this corporation purchased these lands before the town of Leadville grew up, when it was vacant and unoccupied,—purchased it in the year 1877 from this Mr. Starr, who subsequently got a patent for it, about which we have been talking, and for its use as a smelting company, and that it has erected works upon some part of the land. Now, if that be true, if these are the facts, we should not be able to say that it was beyond the power of the corporation to get land for that purpose, and though it may have been something more than was, perhaps, required for its use at that time, getting a tract of thirty acres, or thirty-one acres,—something like that,—from Mr. Starr, yet we would not look very closely into that matter. If they could make a more judicious purchase of thirty-one acres than of a less quantity, it would be proper for them to do so; so that if they did not then know precisely what the requirements of their business would be, and purchased so much with the reasonable expectation that it might become of use thereafter for the purpose of a smelting and refining company, that would be regular, also; and having purchased it for a legitimate purpose,—purchased it for the purpose of its organization and the use for which the company was created,—if they afterwards found that they had no use for a part of it, and sold a portion of it, that would be perfectly regular. And they could sell it for any purpose for which they could find a purchaser, as for use as a town lot, or any other manner. They were not bound to direct the use which a purchaser should make of it. So far as that matter has gone, upon the evidence that we have heard, the law would be with the plaintiff. But upon what I have said to you in respect to this patent, and its invalidity, we find no title whatever in the plaintiff for this tract of land, and therefore it has become your duty, gentlemen, to return a verdict for the defendants.

[This judgment was, upon writ of error, reversed by the supreme court. 104 U. S. 657.]